**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| NRRM, LLC, | ) | **Case No.:** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **AMERICAN DREAM AUTO** | ) | |
| **PROTECT, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff NRRM, LLC d/b/a CarShield submits its Complaint for monetary damages and injunctive relief against Defendant American Dream Auto Protect, Inc.

## INTRODUCTION

1.      This a trademark infringement and false advertising case.

2.      Defendant uses consumer lead agents to generate sales of auto protection plans in direct competition with CarShield through three unlawful methods.

3.      *One*, Defendant's agents, with Defendant's full knowledge and approval, purchase the well-known brand CARSHIELD and related terms as keywords on Google so when a consumer searches for CARSHIELD or CARSHIELD PRICING, as examples, they see a generic sounding "Top Warranty" and similar websites, and then are deceived into believing they can buy a CarShield protection plan if they click on the ad when they cannot. Instead, American Dream gets the customer lead.

4.      *Two,* Defendant's agents, with Defendant's full knowledge and approval, advertise and use what purports to be unbiased ranking and review websites but are actually a pay-to-play platform where the competitors ranked as the top ones on the market, and the ones which get

1

consumer leads, are the companies that pay for the ranking and leads. Their ranking and eventual connection to the consumer isn't based on anything unbiased. The entire platform is a false advertising scheme to lure customers.

5.      *Third,* Defendant's agents, with Defendant's full knowledge and approval, advertise that they are selling "extended warranties" and "auto warranties" when in fact they are not warranties, and according to federal law, Missouri law and many other states' laws, they cannot be marketed and sold as warranties. Warranties come from manufacturers and Defendant is not a manufacturer.

6.      CarShield's claims include infringement of its federally-registered trademarks under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for false advertising and unfair competition under Section 43(a), 15 U.S.C. § 1125(a), and for substantial and related claims of trademark infringement under the statutory and common laws of the State of Missouri.

## BACKGROUND OF THE CLAIMS

7.      CarShield is the nation's leading seller of vehicle service contracts (VSCs) – protecting over two million vehicles. Consumers around the United States know and recognize CarShield as a reliable provider of VSCs available for purchase online through CarShield's own website, www.carshield.com, as advertised through tens of thousands of advertisements in print, television, and radio advertisements.

8.      Defendant American Dream is a direct competitor of CarShield. The problem is that one of American Dream's main methods of competition is to hire third parties to purchase the well-known CARSHIELD trademark as a keyword on internet search engines so numerous generic sounding ads for things like "car warranties" or "top auto warranties" appear atop the sponsored search results on Google, all without CarShield's permission.

9.      American Dream's agreements with its third party advertising agents require that they comply with trademark and unfair competition laws and that they do not falsely advertise. Yet American Dream does nothing to enforce those requirements it has in place.

10.      American Dream's third party agents' keyword bidding practice has resulted in mass actual confusion, including initial interest confusion, costing CarShield millions of dollars because consumers believe that the generic ads are actually for the term they searched, CARSHIELD.

11.      In reality, American Dream ensures that consumers who search for CarShield and click on one of American Dream's agent's generic sounding "car warranty" or "top auto warranty" ads or websites can provide important information about their car, zip code or even phone number or email, but then are referred to American Dream's car protection plans and cannot obtain CarShield plans.

12.      One of American Dream's agent's generic sounding ads even uses CarShield's protected shield logo.

13.      All of that would have been enough to justify legal action, but American Dream did not stop there with its unlawful conduct.

14.      American Dream also knowingly participates in multiple deceptive websites that are unlawful pay-to-play schemes where those websites falsely and intentionally advertise "the best warranties" that are supposedly determined by research. In reality, those websites are fronts to provide consumer leads to American Dream.

15.      The pay-to-play schemes are considered unlawful and deceptive by the government and American Dream's participation in these deceptive schemes is also costing CarShield millions of dollars.

3

16.     But American Dream's bad conduct does not stop there either.

17.     American Dream and its hired agents, all with Defendant's approval and knowledge, advertise vehicle service contracts as "warranties," "auto warranties," and other similar terminology. American Dream's own website offers "extended warranties."

18.     Federal law, several states and numerous state regulators, including the States of Missouri and Ohio, require that a warranty comes from a manufacturer and that the word "warranty" not be used to market or sell vehicle protection plans, like the ones offered by Defendant. American Dream's products are not warranties, but rather aftermarket VSCs. American Dream's agents' advertising for warranties is literally false and violates the Lanham Act and state laws.

19.     CarShield brings this lawsuit for damages and injunctive relief.

20.     Defendant's actions are causing millions in damages, and that number will continue to mount the longer American Dream continues its unlawful practices.

## PARTIES

21.     Plaintiff CarShield is a Missouri limited liability company with its principal place of business in St. Charles County, Missouri, within this judicial district.

22.     Defendant American Dream Auto Protect, Inc. is a New York corporation, with its principal place of business in Albany, New York.

23.     American Dream owns, operates, participates in, and/or uses numerous websites that generate significant revenue as a result of unlawful search engine keyword bidding and false advertising throughout the United States, including in Missouri.

4

**JURISDICTION**

24.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338 and 1367, because CarShield asserts claims for trademark infringement, unfair competition, and false advertising under the Lanham Act, as well as common law and state statutory infringement claims.

25.      This Court has personal jurisdiction over American Dream because it and its agents promote, and offer for sale VSCs that compete directly with those offered by CarShield in this District using CarShield's trademarks. Additionally, this Court has personal jurisdiction over American Dream pursuant to the Missouri's Long Arm Statute, Mo. Rev. Stat. § 506.500. Specifically, American Dream's and its agents' acts constitute the commission of tortious actions within the State of Missouri that impact or affect residents of the State of Missouri.

26.      Venue in the Eastern District of Missouri is proper pursuant to 28 U.S.C. § 1391 because American's misconduct alleged herein occurred within and caused harm in this District. At all relevant times, American committed tortious acts within this District that impact or affect residents of this District.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

**A.      CarShield's Trademark Rights**

27.      CarShield has served as the nation's leading seller of auto protection plans, known as vehicle service contracts (VSCs) for many years – protecting millions vehicles and drivers. CarShield's vehicle protection specialists help drivers around the country choose the right coverage for them from CarShield's selection of plans for their vehicle.

28.      In connection with its VSCs sold throughout the United States, CarShield utilizes and owns a set of federally-registered trademarks.

29.      CarShield's federally registered marks include: (i) its United States federal trademark registration for the standard character mark CARSHIELD® (Reg. No. 5,133,928, issued

by the United States Patent and Trademark Office ("USPTO") on January 31, 2017) for "[v]ehicle service contracts on vehicles manufactured by others for mechanical breakdown and servicing"; (ii) its United States federal trademark registration for the standard character mark CARSHIELD.COM® (Reg. No. 5,092,752, issued by the USPTO on November 29, 2016), for "[v]ehicle service contracts on vehicles manufactured by others for mechanical breakdown and servicing"; and (iii) its United States federal trademark registration for its design mark in connection with the following logo (Reg. No. 7,730,607, issued by the USPTO on March 18, 2025):



30.    CarShield also owns the common law rights to these federally-registered marks throughout the U.S., including Missouri, in addition to the trademark in the CarShield "shield logo" displayed below, which is subject to a federal trademark application, Serial No. 98,599,359 (preliminarily approved):



31.    The trademarks above shall collectively be referred to as the "CarShield Marks" or "Marks."

32.    CarShield has been using the CarShield Marks in commerce to market vehicle service contracts continuously since at least as early as 2016.

6

33.     Through extensive advertising, marketing, and promotion efforts, CarShield has generated a significant amount of goodwill and consumer recognition in its CarShield Marks. The established and continued success of CarShield's VSCs affiliated with its CarShield Marks can hardly be overstated. As recently as February 2024, CarShield earned recognition as the "Most Trusted Brand" in the United States by Newsweek and BrandSpark.

34.     CarShield has significantly invested millions of dollars in marketing, advertising, and promoting its CarShield Marks in connection with the sale of vehicle service contracts to consumers.

35.     The CarShield Marks are prominently displayed on CarShield's website, www.carshield.com, allowing customers to receive quotes for vehicle service contracts.

36.     CarShield is repeatedly recognized by its community and many different organizations both locally and nationally.

37.     CarShield has been featured on thousands of TV and radio stations across the country backed by some of the biggest names in the entertainment and news industries.  CarShield partners with well-known celebrities such as Ice-T, Chris Berman, Ric Flair, Vivica Fox, Michael Chandler and Pat Maroon to help promote its brand and products, and CarShield's advertisements have been featured on popular television networks including, without limitation, ABC, ESPN, Lifetime, CNN, Fox News, USA Today, CNBC, and the NFL Network.

38.     CarShield has featured its CarShield Marks in tens of thousands of print, television, and radio advertisements to market its VSCs. CarShield also invests substantial amounts of money for its sponsorship of largely attended events, including sponsoring professional sports teams such as the St. Louis Cardinals, St. Louis Blues, sponsoring its own CarShield vehicle and driver on the NASCAR circuit, and having a CarShield sponsored stadium for minor league baseball.

39.    By virtue of CarShield's extensive, continuous, and exclusive use of the CarShield Marks to advertise, promote, distribute, and sell vehicle service contracts, consumers across the United States recognize the CarShield Marks and CarShield brand as belonging to CarShield, associate the services offered and sold under the CarShield Marks exclusively with CarShield, and recognize and trust CarShield as the source of the vehicle service contracts offered for sale and sold under the CarShield Marks.

40.    CarShield's Marks have earned valuable goodwill from being widely recognized, associated with, and identified by consumers and the trade.

41.    CarShield's Marks are well-known and immediately recognizable to consumers.

**B.     American Dream Knowingly, Intentionally, and Systematically Engages Third Party Agents to Purchase CARSHIELD and Combinations of CarShield's Marks as Keywords on the Largest Internet Search Engines to Direct Traffic to its Generic Advertisements for Car Warranties and Best Car Warranties.**

42.    American Dream, through its third party agents and affiliates knowingly, intentionally and continuously purchase and bid for the keyword "CARSHIELD", or variations thereof, on the largest and most used internet search engines so that when consumers search for CARSHIELD, American Dream's generic ads for car warranties appear at or near the top in the sponsored ad section of search results.

43.    Specifically, American Dream has engaged multiple third party agents which own and operate at least the following "car warranty" websites that generically advertise online to generate customer leads for Defendant:

Carwarrantyestimates.com

Carwarrantyoffers.com

Goautowarranty.com

Reviews.comparecarwarranties.com

Consumeraffairs.com

Consumersvoice.org

Consumersadvocate.org

Gowizard.com

Forbes.com

Top10.com

44.     Their sponsored advertisements on Google, as described above, only advertise general VSCs, not specific or distinctive. Nothing in their ads lets a customer know they aren't getting CarShield.

45.     Typical internet ads for these auto or car warranty sites on major internet search engines such as Google, Bing, and Yahoo! that send customer leads to American Dream include:



my.consumeraffairs.com my.consumeraffairs.com

**Carshield Protection Plans - Review All Car Warranty Plans**

my.consumeraffairs.com has been visited by 10K+ users in the past month

Save money on car repairs with our comprehensive auto warranty plans. Drive smart! Protect your car and your wallet with our cost-effective auto warranties.

Connect With Top Brands · Car Repair Reimbursement · Read Customer Reviews · Collision Discount

Types: Auto Warranty, Bumper To Bumper Coverage, Repair And Maintenance, Luxury Brands

| Scams | Powertrain |
| Protect My Car | Olive |

CarWarrantyOffers

https://carwarrantyoffers.com › auto-coverage › get-your-quote ▾

**Affordable Car Coverage | Top-Rated Car Protection Plans**

Sponsored  Protect Your Car Before It Is Too Late! See Our Coverage Plans & Drive With Peace of Mind. Best Auto Protection Offers. Multiple Plans. Never Pay For Unexpected Car Repair Bills.

| Compare Plans | High Mileage Coverage |
| #1 Car Protection Plan | Affordable Payments |



**Sponsored**

Car Warranty Estimates
https://www.carwarrantyestimates.com ⋮

**Avoid Unexpected Repair Bills | Extend Your Car's Warranty**

Affordable Auto Protection Deals. Reliable Providers. Never Pay For Unexpected Car Repairs



**Sponsored**

Compare Car Warranties
https://reviews.comparecarwarranties.com ⋮

**Warranty Companies For Vehicles | Get an Instant Quote**

Find The Best **Extended Vehicle Warranty** For Your **Car** & Budget. Compare Plans & Save Today!

46.     American Dream specifically and intentionally works with agents which then use generic-sounding ads and website names with automotive or car warranty titles, or the generic "best warranties" or "top warranties" in order trick, deceive and confuse consumers who are searching for CarShield's products or services into believing that they can find CarShield's well-known, legitimate VSC's on those sites.

47.     American Dream engages these customer lead providing agents, which use generic-sounding advertisements that do not include any reference to American Dream, because American Dream and its agents intend to trick consumers into continuing to click through to the website believing that they can obtain CarShield protection plans.

48.     American Dream's agents purposefully do not label or indicate that their generic ads direct a customer ultimately to American Dream and other competitors which pay for these consumer leads.  They dupe consumers by masquerading as a gateway to and source for CarShield VSCs, when in fact the advertised websites prevent consumers from linking to CarShield's websites and obtaining CarShield VSCs.

49.     Consumers reach those sites by specifically requesting CarShield on internet search engines, and without searching at all for Defendant.

10

50.     A customer who sees American Dream's agents' advertisements is likely to be misled into clicking on them when searching for CarShield products and services, unaware that they will be taken to websites that sell VSCs sold by American Dream and to websites that either do not offer or do not even make it possible to obtain VSCs sold by CarShield.

51.     An example is provided below.   A consumer who searches for "Carshield Warranty" on Microsoft's Bing search engine is presented with the following generic advertisement:



52.     Once the customer clicks on the generic ad, they are taken to American Dream's agents' carefully constructed scheme of false and deceptive advertising.   Consumers cannot possibly know they are about to be solicited by American Dream because its agents' goal is to funnel leads to CarShield's competitors.

53.     American Dream through its agents thus use CarShield's Marks to generate initial interest from consumers in car warranties or VSCs, and then directs those unsuspecting consumers to carefully constructed websites where consumers are confused and deceived into mistakenly believing they are learning about, providing personal information for,  and ultimately obtaining

quotes for CarShield VSCs.  In reality, those consumers are directed to American Dream's VSCs, at least initially believing they are CarShield VSCs after searching and viewing the ads.

54.    Importantly, American Dream's agreements with these agents require the agents to not violate trademark, unfair competition and false advertising laws. Yet American Dream does nothing to enforce those requirements as it sits back and benefits from the scheme.

55.    American Dream through its agents use CarShield's Marks to falsely advertise that consumers can obtain CarShield VSCs through those generic websites, and to create the false impression that they can buy a CarShield VSC from the website.  None of that is true, and it all misleads and deceives customers. It is impossible for consumers to obtain the very thing they were searching for in the first place.

56.    In numerous instances, American Dream's agents buy combinations of "CarShield" as keywords to generated generic sponsored ads claiming customers are selecting the "#1 Car Protection Company," when American Dream knows full well that CarShield is the leading VSC company in the country. This is purely intended to dupe customers.

57.    American Dream's and its agents' conduct is so bad that they even sometimes intentionally use logos that are confusingly similar to CarShield's trademark protected shield logo. CarShield uses its shield checkmark logo in conjunction with the "CarShield" marks most or all of the time.  CarShield's shield and checkmark logo is used in all of CarShield's print, television and visual media advertising, and is featured with the CarShield mark in CarShield's advertising in stadiums, on NASCAR vehicles and clothing.  It's also extremely well-known, and associated by consumers as designating CarShield as the origin of VSCs with the blue shield logo.  It's everywhere.

| AMERICAN DREAM'S AGENT: | CARSHIELD: |
|---|---|
|  | |

58.     American Dream and its agents have had actual notice of CarShield's trademark rights in the CarShield Marks through CarShield's trademark registrations for the Marks.

59.     American Dream and its agents also had actual notice of CarShield's trademarks rights, given CarShield's widespread use of its well-known CarShield Marks (word marks and shield checkmark logo) and CarShield brand.

60.     Despite actual notice of CarShield's trademark rights in its Marks, American Dream through its agents have used, and continues to use, the CarShield Marks and confusingly similar terms, marks, phrases and names to advertise both VSCs and auto warranty and VSC providers that compete directly with CarShield.

61.     American Dream's agents', with American Dream's full knowledge and ratification, continuous and systematic practice of buying CarShield-based keywords and the resulting generic "car warranty" and "best car warranties" sponsored ads, as well as American Dream's (through its agents) infringement of CarShield's shield logo, are causing significant confusion among consumers, including initial interest confusion and initial source confusion as to the source of VSCs and auto warranties offered in the ads above.

C.     **American Dream Participates in Multiple Falsely Advertised Pay-to-Play Websites**

62.     In addition to the improper keyword use, American Dream also knowingly participates in and engages multiple website platforms that advertise themselves as essentially unbiased ranking and review websites where consumers can supposedly find the top-rated vehicle service companies, but where American Dream knowingly pays the website provider for customer leads. Paying for customer leads is the only way to obtain referrals to consumers who visit the sites.

63.     These websites run ads purporting to be unbiased consumer protection or "top ranked car warranty" websites but they are far from it.

64.     Typical internet ads for these purportedly unbiased consumer protection or "top ranked car warranty" websites on major internet search engines such as Google, Bing Sponsored Sites, and Yahoo!, include:

Sponsored

 GoWizard
https://www.gowizard.com      ⋮



**Independent Warranty Reviews**

Top 5 Auto Warranties — It Can Take Just 3 Repairs To Break Even On A Car Warranty. Find The Best Provider For You. Breakdowns Will Happen. Protect Yourself With An Extended Auto Warranty. Get A Free Quote. 60 Second Quote...

Which Company Is Best · 7 Best Extended Car Warranties · Review 2025 Best Deals

Sponsored

 Forbes
https://www.forbes.com › protection-plan › auto-warranties      ⋮



**Side-By-Side Comparisons | Best Auto Warranty of 2025**

Elevate Your Driving Experience with a Top-Notch Auto Warranty. See Our Rankings & Reviews. Affordable Auto Warranty Plans Customized For Your Vehicle's Protection. Get a Free Quote!

14

**Sponsored**


Consumer Affairs
https://my.consumeraffairs.com  ⋮

**Don't Overpay, Compare Pricing | 2025's Best Auto Warranties**

Protect your car and your wallet with an extended auto warranty from a top rated provider.

**Sponsored**

Consumer Review Center
https://www.consumerreviewcenter.com  ⋮

**Full Bumper-to-Bumper Warranty**

5 Best Car Warranties of 2025 — Should You Get an Extended Warranty? Here're Top Extended Car Warranty Companies of 2025.



**Our #1 Choice**                                                                                          ›
See top rated warranty provider Find the best coverage for your car

**Our #1 Warranty Choice**                                                                          ›
Nation's leading provider. Let our experts do the research.


Top10.com
https://www.top10.com › car_repair › coverage ▾

**Car Repair Warranty Plans | Side-by-Side Comparison**

Sponsored Compare the Best Car Repair Insurance and Pick the Repair Plan That's Best for Your Car. Discover the Best Car Repair Insurance for Your Needs. Compare Excellent Repair Plans. Customer-First Approach · Clear Pricing Available · Affordable Payments

**2025's Best Car Warranty**                              **Warranty Companies**

**Top Brands Full Reviews**

65.     In reality, these deceptive websites are not consumer protection websites or unbiased ranking websites recommending or ranking the best VSCs. They only refer business to the companies which pay them. American Dream is listed as one of the companies which pays these platforms.

66.     These companies not only operate unlawful pay-to-play websites, but many also bid on and purchase the keyword CARSHIELD (or variations thereof) to generate numerous false

ads for their pay-to-play scheme, then send customers not to CarShield as searched for, but rather to companies that pay to get referred business.

67.    Most of these pay-to-play sites make it impossible for the consumer to reach CarShield through the sites, even though the consumer searched for CarShield in the first place. All of this activity occurs with American Dream's knowledge and explicit agreement to participate – making American Dream's business practices of participating in these sites and sending solicitation emails or text messages intentionally deceptive and misleading.

68.    Examples of these pay-to-play platforms that American Dream knowingly participates in, engages as agents to provide it customer leads and pays for include: consumervoice.org; top10.com; gowizard.com; consumeraffairs.com; consumersadvocate.org; consumerreviewcenter.com; and others.

69.    The FTC has made it clear that these pay-to-play websites constitute false or deceptive acts:

> Some comparison websites claim to give consumers unbiased, expert reviews of businesses and products. Behind the scenes, though, some of these websites are running pay-to-play operations, offering better ratings, reviews, and placement in exchange for a fee. Don't participate in this kind of deceptive advertising. *See* FTC Guidance, "Soliciting and Paying for Online Reviews: A Guide for Marketers" (Jan. 2022), available at https://www.ftc.gov/business-guidance/resources/soliciting-paying-online-reviews-guide-marketers.

70.    The FTC's guidance explains how Defendant's participation in pay-to-play websites materially deceives a substantial segment of CarShield's audience – and, indeed, it does. CarShield has lost millions of dollars in revenue from lost VSC sales because of American Dream's knowing participation in unlawful and deceptive pay-to-play schemes.

71.    American Dream's knowing participation in these websites to confuse customers, mislead the public and syphon customers from CarShield constitutes additional deceptive and false advertising.

**D.    American Dream and its Agents Falsely Advertise VSCs that Directly Compete with CarShield as "Warranties," "Extended Car Warranties" and Similar Phrases**

72.    American Dream and its agents advertise American Dream VSCs as "auto warranties," "warranties," "extended warranties" and the like, when they are actually vehicle service contracts which directly compete with those of CarShield.

73.    American Dream's agents operate no less than eleven websites that advertise American Dream VSCs as warranties: www.carwarrantyoffers.com, www.carwarrantyestimates.com, www.goautowarranty.com, www.gowizard.com, www.consumervoice.org, www.consumerreviewcenter.com, www.consumersadvocate.org, www.consumeraffairs.com, reviews.comparecarwarranties.com, top10.com, and www.forbes.com.

74.    American Dream's agents also run internet ads that regularly advertise its VSCs as warranties.

75.    American Dream's own website refers to them as "extended warranties."

76.    However, American Dream and its agents know they can't promote VSCs as warranties.

77.    Pursuant to Magnuson-Moss Warranty Act 15 U.S.C. § 2301, American Dream is not an automobile manufacturer or vehicle seller and is thus unable to offer "warranties." Yet, American Dream and its agents falsely and illegally purport to offer warranties by using these terms.

78.    Use of the term "warranty" to advertise VSCs is literally false.

79.    Several U.S. state laws and regulations, and enforcement actions, including Missouri's and Ohio's, prohibit use of these terms to sell service contracts.

80.    American Dream's violation of state and federal laws by falsely advertising vehicle service contracts as auto or car warranties, as described above, is causing harm to CarShield.

**E.    American Dream's Conduct is Willful**

81.    American Dream's conduct described was and continues to be knowing and willful, intended to unfairly compete with CarShield and steal CarShield's business.

### COUNT I
### Violation of Lanham Act § 32, 15 U.S.C. § 1114 – Infringement of Federally Registered Trademarks

82.    CarShield restates the allegations contained in the preceding paragraphs.

83.    Defendant's continued use of the CarShield Marks in commerce in connection with the offering for sale of VSC products is likely to cause, and has in fact caused, confusion, mistake or deception.

84.    Defendant through its hired guns has and is continuing to reproduce, copy, and colorably imitate the CarShield Marks and apply such reproduction, copy and colorable imitation to products and/or advertisements intended to be used in commerce in connection with the offering for sale of VSCs in a way that is likely to cause confusion, mistake, or to deceive.

85.    Defendant does not have permission to use or hire others to use the CarShield Marks.

86.    Defendant's and its agents' use of the CarShield Marks is intentional and willful.

87.    Specifically, Defendant through its agents has knowingly, willingly, and intentionally used CarShield's Marks on internet search engines including at least Google, Bing, and Yahoo! to advertise its VSCs in connection with generic sounding websites and/or

18

advertisements purporting to sell various "warranties", including "car warranties" and "vehicle warranties", trading on the substantial goodwill and recognition of CarShield's Marks by consumers in conjunction with VSCs.

88. Defendant's and its agents' knowing and intentional use of the CarShield Marks in such keyword advertising does, and was intended to cause confusion, to cause mistake, or to deceive consumers about the source of its competing VSCs. Such conduct is likely to lead consumers to fall victim to (at a minimum) initial interest confusion and initial source confusion – believing that the VSCs advertised by American originate from CarShield and/or are associated with, affiliated with, provided by, and/or are endorsed by CarShield.

89. Trading on the recognition of the CarShield Marks, and CarShield's specific reputation of being the number one trusted brand in its industry category, Defendant knowingly, willfully, and intentionally used the CarShield Marks in keyword advertising to exploit CarShield's recognition, the substantial time, effort and expense invested in building the CarShield brand, and infringe the CarShield Marks.

90. American Dream's (through its agents) infringement has caused significant actual confusion and is likely to cause mass consumer confusion.

91. As a result of the unlawful conduct of Defendant, CarShield has been damaged, has suffered irreparable harm, and is likely to continue to suffer irreparable harm unless Defendant's actions are enjoined by this Court. CarShield has suffered substantial damage.

92. CarShield is entitled to, among other relief, injunctive relief and an award of its actual damages (or, in the alternative, statutory damages pursuant to 15 U.S.C. §1117(c)), Defendant's profits, enhanced damages and profits, costs, and attorneys' fees.

93.     CarShield has been damaged and harmed by Defendant's activities at least in the millions of dollars. The number of leads siphoned away from CarShield, applying CarShield's normal sales conversion rate, and the profit per sale, supports this number.

<u>**COUNT II**</u>
<u>**Violation of Lanham Act Section 43(a), 15 U.S.C. § 1125(a) – False Designation of**</u>
<u>**Origin and False or Misleading Description of Fact as to the CarShield Marks**</u>

94.     CarShield restates the allegations contained in the preceding paragraphs.

95.     Defendant's actions as set forth in this Complaint and Defendant's (through its agents) unlawful use of the CarShield Marks, individually and in combination, violate 15 U.S.C. §1125(a).

96.     Defendant through its agents has used and is continuing to use the CarShield Marks without approval and in a manner that has caused actual confusion and is likely to cause confusion – which, at a minimum, is initial interest confusion and/or initial source confusion.

97.     Defendant through its agents has used and is continuing to use the CarShield Marks without approval and in a manner that is deceptive as to affiliation, connection, or association of Defendant with CarShield.

98.     Defendant through its agents has used and is continuing to use the CarShield's Marks in keyword advertising that results in generic ads and website promotion that falsely and misleadingly infer those sites as sources of CarShield products, when in fact Defendant's generic websites are not a source of CarShield's VSCs. The competing vehicle service contracts and services that Defendant's offer and through its agents advertise compete with CarShield's vehicle service contracts and other services. Defendant through its agents has used and is continuing to use the CarShield Marks to advertise and to offer for sale competing VSCs in a manner likely to confuse or deceive individuals by misrepresenting that Defendant's competing VSCs are created, authorized, or approved by CarShield, when they are not.

99.     This unauthorized use by Defendant through its agents in commerce of the CarShield Marks as alleged herein constitutes use of a false designation of origin and misleading description and/or representation of fact.

100.    Upon information and belief, Defendant's conduct is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection or association of Defendant with CarShield.

101.    As a result of Defendant's conduct, CarShield has incurred losses to its business and to the value of its marks, lost sales, and other losses for which CarShield is entitled money damages pursuant to 15 U.S.C. § 1125.

102.    CarShield is entitled to, among other relief, injunctive relief and an award of its actual damages, Defendant's profits, enhanced damages and profits, costs, and attorneys' fees.

## COUNT III
## Violation of Lanham Act Section 43(a), 15 U.S.C. § 1114 – Trademark Infringement of Registered Mark as to the CarShield Logo (Which Is Scheduled to be Federally-Registered Before Defendant's Answer is Due)

103.    CarShield restates the allegations contained in the preceding paragraphs.

104.    American Dream's (through its agents) continued use of multiple infringing shield checkmark logos in commerce in connection with the offering for sale of VSC products is likely to cause confusion, mistake or deception.

105.    Defendant through its agents has and is continuing to reproduce, copy, and colorably imitate CarShield's proprietary and protected logo and apply such reproduction, copy, and colorable imitation to advertisements intended to be used in commerce in connection with the offering for sale of VSCs in a way that is likely to cause confusion, mistake, or deception.

106.    Indeed, Defendant, through its advertising agents, is displaying multiple shields that are similar in shape, and which in some cases contain the same inset checkmark, as CarShield's proprietary and protected logo.

22

107.    Defendant through its agents even displays a shield checkmark logo in conjunction with generic terms such as "Extended Vehicle Warranty" and "Auto Warranty" to confuse and deceive consumers into believing that the source of the "Extended Vehicle Warranty" is CarShield.

108.    Defendant does not have permission to use or hire others to use CarShield's federally-registered and protected logo.

109.    The actions alleged in this Complaint were committed with knowledge that such imitation does, and was intended to, cause confusion, to cause mistake, or to deceive as to the source and origin of the VSCs being offered.

110.    Defendant's (through its agents) use of CarShield's logo is willful.

111.    As a result of the unlawful conduct of Defendant, including the use of CarShield's logo, CarShield has been damaged, has suffered irreparable harm, and is likely to continue to suffer irreparable harm unless Defendant's and its agents' actions are enjoined by this Court.

112.    CarShield has been damaged and harmed by the infringement of the logos in an amount to be proven.

### COUNT IV
### Violation of Lanham Act Section 43(a), 15 U.S.C. § 1125(a)(1)(B) – False Advertising and Unfair Competition

113.    CarShield restates the allegations contained in the preceding paragraphs.

114.    Defendant's engagement of, participation in, and/or use of pay-to-play websites masquerading as unbiased review and ranking sites violates various federal laws and unfairly competes with CarShield.

115.    Defendant knowingly participates in these websites knowing they falsely claim to be unbiased review and rankings sites, and knowing that they only refer consumer and customers to companies that pay them for rankings and referrals.

116.    The so-called unbiased sites refer consumers and customers to companies that pay them and American Dream is one of their biggest participants.

117.    This is yet another way Defendant knowingly misleads customers into buying VSCs from American Dream.

118.    Defendant's participation and cooperation in these false advertising platforms violates of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) because, by paying to participate in the pay-to-play websites, Defendant is necessarily paying for and approving of the website's content, thereby making and endorsing false statements of fact about its own and other's products. Also, by paying for rankings or placement on these pay-to-play websites, Defendant thus makes and endorses false and deceptive statements about rankings, quality or popularity that are not based in fact or evidence, but rather on the amount of payments. Defendant cannot hide behind making false statements by having others make the statements for them.

119.    Such pay-to-play websites have the tendency to deceive a substantial portion of the audience, and, in fact, meet the definition of deceptive advertising according to the FTC. *See* FTC Guidance, "Soliciting and Paying for Online Reviews: A Guide for Marketers" (Jan. 2022), available at [https://www.ftc.gov/business-guidance/resources/soliciting-paying-online-reviewsguide-marketers](https://www.ftc.gov/business-guidance/resources/soliciting-paying-online-reviewsguide-marketers).

120.    Such deception is material and Defendant through these agents has caused the false statement to enter interstate commerce through its knowing participation in the pay-to-play scheme.

121.    Defendant has been, and is likely to continue to be, unjustly enriched by its deliberate, willing and intentional infringing conduct.

122.    Defendant's wrongful conduct constitutes an "exceptional case" under the Lanham Act.

123.    CarShield has been damaged and harmed by Defendant's activities in the millions of dollars.

## COUNT V
## Violation of Lanham Act Section 43(a), 15 U.S.C. § 1125(a) – False Advertising

124.    CarShield restates the allegations contained in the preceding paragraphs.

125.    Defendant's and its agents' use of phrases such as "auto warranties," "car warranties" and "extended warranties" in Google ads and on the websites it owns, operates, participates in, and/or uses, including, www.americandreamautoprotect.com, www.carwarrantyoffers.com, www.goautowarranty.com, and www.carwarrantyestimates.com, just to name a few, misleads consumers into thinking that Defendant markets and/or offers for sale "warranties" for automobiles when the products and services offered by Defendant are not automobile or car warranties.

126.    The use of the terms automobile warranties, car warranties or the like to sell VSC's is prohibited by Federal Law, including the Magnuson-Moss Warranty Act, as well as multiple state laws and regulatory agencies including the Missouri Department of Insurance and the Ohio Attorney General.

127.    In fact, a non-manufacturer like American Dream cannot sell a car or automobile warranty.

128.    Defendant knows and understands that the use of the terms automobile warranties, car warranties or the like to sell VSC's is prohibited by law yet continues to market automobile and car warranties knowing Defendant's actions are violating federal and state laws.

25

129.   Defendant's false, inaccurate, and misleading website advertisements and statements about its own product is literally false and continues to harm the general public by promoting, advertising, and offering for sale a product (car warranty) that is different than the product it actually offers (vehicle service contract).

130.   Not only are Defendant's and its agents' "warranty" advertisements, promotions and offers for sale literally false, they are also misleading in context and/or likely to deceive consumers because they implicitly convey a false impression of what a consumer is purchasing. A consumer is not merely purchasing another warranty, or extending a warranty, but rather a consumer is purchasing a vehicle service contract unaffiliated with any manufacturer or manufacturer's warranty.

131.   Such statements actually deceive, or, at a minimum, have the tendency to deceive a substantial portion of the audience, and such deception is material to purchasing decisions of consumers.  Consumers are inundated and confused with advertising for and promotion of car and automobile warranties, and Defendant's and its agents' false "warranty" advertisements and promotions confuse consumers as to what products are being sold to protect their vehicle. Defendant's and its agents' false "warranty" advertisements and promotions likewise create the impression of a scam intended to deceive consumers, and diminish the credibility of Plaintiff and Plaintiff's VSCs that are often compared on a myriad of websites against Defendant's products.

132.   By advertising and/or making these statements on the internet, Defendant has caused the false statements to enter interstate commerce.

133.   Defendant's conduct, as set forth above, constitutes literal false advertising under the Lanham Act, 15 U.S.C. § 1125.

134.    CarShield lacks a complete and adequate remedy at law, and will continue to suffer irreparable harm if Defendant's and its agents' activities are not enjoined.

135.    CarShield has been damaged and harmed by Defendant's activities to an extent that will be determined at trial.

## COUNT VI
## Trademark Infringement under Missouri Common Law

136.    CarShield restates the allegations contained in the preceding paragraphs.

137.    Through its actions described above, Defendant's agents' use of the CarShield's Marks in keyword advertising and confusingly similar marks, terms, and phrases is likely to confuse and mislead consumers into thinking that the competing VSCs advertised on search engines like Google are associated with, provided by, affiliated with or endorsed by CarShield.

138.    Defendant's (through its agents) use of CarShield's Marks and confusingly similar marks, terms, and phrases infringes CarShield's trademark rights, causing significant damages to CarShield in violation of the common law of the State of Missouri.

139.    Defendant knowingly, willingly, and intentionally misused CarShield's common law Marks and confusingly similar marks, terms, and phrases to:

a.    injure CarShield's business;

b.    trade on its recognition;

c.    pass off competing VSCs as CarShield's VSCs; and/or

d.    confuse and deceive consumers.

140.    Defendant has been and is likely to continue to profit unfairly from its infringing conduct, as described above.

141.    CarShield lacks a complete and adequate remedy at law, and will continue to suffer irreparable harm and injury to its goodwill and reputation if Defendant's activities are not enjoined.

142.    CarShield has been damaged and harmed by Defendant's activities in the millions of dollars.

## COUNT VII
## Violation of Mo. Rev. Stat. 44 417.061, 417.066
## (State Trademark Infringement)

143.    CarShield restates the allegations contained in the preceding paragraphs.

144.    Through its actions described above, Defendant's agents' unauthorized use of the CarShield Marks and confusingly similar marks, terms, and phrases in keyword advertising and by use of the logos is likely to mislead consumers into believing that the competing VSCs advertised by American Dream's agents are provided by, endorsed by, authorized by, or affiliated with CarShield.

145.    This has harmed, and continues to harm, CarShield's business, including, without limitation, its reputation and goodwill, and diluted the distinctiveness of the CarShield Marks.

146.    Defendant's agents' use of the CarShield Marks and confusingly similar marks, terms and phrases infringes and dilutes the CarShield Marks, entitling CarShield to injunctive relief pursuant to Mo. Rev. Stat. §§ 417.061 and 417.066.

147.    Defendant's agents' wrongful use of the CarShield Marks and confusingly similar marks, terms and phrases is a deliberate, intentional and willful attempt to injure CarShield's business, to trade on CarShield's business, and/or to confuse and deceive consumers.

148.    CarShield lacks a complete and adequate remedy at law, and will continue to suffer irreparable harm and injury to its goodwill and reputation if Defendant's activities are not enjoined.

149.    CarShield has been damaged and harmed by Defendant's activities in the millions of dollars.

## PRAYER FOR ALL COUNTS

WHEREFORE, CarShield requests that judgment be entered in its favor and that:

A.     This Court award all damages and other monetary relief available as a result of Defendant's infringement and false advertising, such damages and monetary relief including, but not limited to, actual damages, lost profits, Defendant's profits, statutory damages, treble damages, attorneys' fees, and all other monetary relief available under 15 U.S.C. § 1117, other federal and state laws and otherwise;

B.     This Court enter injunctive relief ordering Defendant, and its successors, assigns, affiliates, employees, partners, and anyone acting in concert with them or at its behest or direction, to:

1)     Cause its third party advertisers to cease purchasing keywords on search engines that include "CARSHIELD," "CARSHIELD.COM," and/or "CAR SHIELD" or any other confusingly similar term or phrases to generate generic "warranty" advertisements;

2)     Cause its third party advertisers to terminate and disable any and all internet search engine ad word or similar service or program that uses the CarShield Marks or any confusingly similar mark, term or phrase;

3)     Cause its agents to input as negative keywords in search engines CARSHIELD and similar names;

4)     Cause its third party advertisers to cease using words and phrases that describe or advertise VSCs as "warranties";

5)     Cause its third party advertisers to cease using shield checkmark logos in advertising;

29

6)      If any of its third party advertisers do not comply with the directives in 1-5 above, cease engaging said third party advertisers and cease accepting consumer leads from them;

7)      Cease participating in or accepting consumer leads from pay-to-play websites.

C.      This Court award CarShield such other and further relief, including costs, as this Court deems just and equitable.

### JURY DEMAND

CarShield hereby demands a jury trial on all issues so triable.

DATED this 26th day of March, 2025.

By:  /s/    Jeffrey H. Kass
Jeffrey H. Kass, E.D.Mo# 60672
1125 17th St, Suite 500
Denver, CO 80202
Tel: (303) 723-8400
Fax: (844) 670-6009
Email: JKass@dickinson-wright.com

*Attorneys for Plaintiff NRRM, LLC dba CARSHIELD*

4900-4204-6505 v2 [105444-59]