UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NRRM, LLC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:25-CV-389 SRW |
| AMERICAN DREAM AUTO PROTECT, INC., | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant American Dream Auto Protect, Inc.'s Motion to Dismiss (ECF No. 11). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). The Court will grant the motion.

**I.    BACKGROUND**

In March 2025, Plaintiff NRRM, LLC, doing business as CarShield, filed a complaint alleging Defendant American Dream Auto Protect, Inc. infringed its trademarks when Defendant paid internet search engines for its websites to appear as a sponsored advertisement when a consumer searches for the term, "CarShield." In April, Plaintiff filed an amended complaint and shortly thereafter, Defendant filed the pending motion to dismiss. In the amended complaint, Plaintiff asserts four counts: two counts for violations of the Lanham Act and two counts for trademark infringement under Missouri state law. The alleged violations of the Lanham Act are for infringement of federally registered trademarks and false designation of origin and false or misleading description of fact. The alleged violations under Missouri state law are for trademark

1

infringement under common law and state trademark infringement in violation of Missouri Revised Statutes § 417.061 and § 417.066.

The following facts are accepted as true for the purposes of this order.

Plaintiff is the nation's leading seller of auto protection plans, known as vehicle service contracts ("VSCs"), protecting millions of vehicles and drivers. Plaintiff's vehicle protection specialists help drivers choose the right coverage from Plaintiff's selection of plans. Plaintiff utilizes and owns a set of federally registered trademarks which includes:

    i.    CARSHIELD, Reg. No. 5,133,928 issued by the United States Patent and Trademark Office ("USPTO") on January 31, 2017, for "[v]ehicle service contracts on vehicles manufactured by others for mechanical breakdown and servicing";

    ii.    CARSHIELD.COM, Reg. No. 5,092,752, issued by the USPTO on November 29, 2016, for "[v]ehicle service contracts on vehicles manufactured by others for mechanical breakdown and servicing"; and

    iii.    its design mark and logo (as seen on page five of ECF No. 10), Reg. No. 7,730,607, issued by the USPTO on March 18, 2025.

    iv.    its design mark and logo (as seen on page five of ECF No. 10), Reg. No. 7,758,768, issued by the USPTO on April 15, 2025.

Plaintiff has been using these marks in commerce to market VSCs since at least 2016.

Through advertising, marketing, and promotion efforts, Plaintiff has generated goodwill and consumer recognition in its marks. As recently as February 2024, Plaintiff earned recognition as the "Most Trusted Brand" in the United States by Newsweek and BrandSpark. Plaintiff has invested millions of dollars in marketing, advertising, and promoting its marks in connection with the sale of VSCs. The marks are prominently displayed on Plaintiff's website, www.carshield.com, where customers can receive quotes for VSCs. Plaintiff has been featured on thousands of TV and radio stations. It partners with celebrities such as Ice-T, Chris Berman,

2

Ric Flair, Vivica Fox, Michael Chandler, and Pat Maroon. Its advertisements have been featured on ABC, ESPN, Lifetime, CNN, Fox News, USA Today, CNBC, and the NFL Network.

Additionally, Plaintiff has featured its marks in tens of thousands of print, television, and radio advertisements. Plaintiff also sponsors largely attended events, professional sports teams such as the St. Louis Cardinals and St. Louis Blues, its own vehicle and driver on the NASCAR circuit, and a stadium for minor league baseball. These efforts make Plaintiff's marks well-known and immediately recognizable to customers.

Defendant, through third-party agents, purchased and bid for the keyword "CARSHIELD," and variations, on internet search engines so that when consumers search for CARSHIELD, Defendant's ads for car warranties appear at or near the top in the sponsored ad section of search results. To do so, Defendant has engaged third parties which own and operate the following websites: carwarrantyestimates.com; carwarrantyoffers.com; goautowarranty.com; reviews.comparecarwarranties.com; consumeraffairs.com; consumersvoice.org; consumersadvocate.org; gowizard.com; forbes.com; top10.com; and fullcarwarranty.com. Their sponsored ads on Google, for example, advertised general VSCs; nothing in their ads lets a consumer know they are not getting CarShield.

Examples of typical internet ads for these sites on major internet search engines such as Google, Bing, and Yahoo! can be found on page eight of Plaintiff's amended complaint. Defendant's agents do not label or indicate that their generic ads direct a customer to Defendant and other competitors who pay for the websites to send them consumer leads. The advertised websites prevent consumers from linking to Plaintiff's websites and obtaining Plaintiff's VSCs. Consumers reach these websites by specifically requesting CarShield on internet search engines, without searching at all for Defendant. An example of the ad a consumer who searches for

"Carshield warranty" on Microsoft's Bing search engine can be found on page 10 of Plaintiff's amended complaint. Once a consumer clicks on the ad, they do not know they are being solicited by Defendant or that the goal is to funnel customers to Plaintiff's competitors. Defendant, through its agents, uses Plaintiff's marks to generate initial interest in car warranties or VSCs from consumers and then directs those consumers to its own websites and VSCs. Consumers are deceived into believing they are learning about, providing personal information for, and ultimately obtaining quotes for Plaintiff's VSCs.

Defendant's agreements with these agents require that the agents not violate trademark, unfair competition, and false advertising laws. However, Defendant does not do anything to enforce these requirements. Defendant's agents buy combinations of "CarShield" as keywords to lead consumers to generic sponsored ads claiming customers are selecting the "#1 Car Protection Company" when Defendant knows that Plaintiff is the leading VSC company in the country.

## II.   STANDARD

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), but must include sufficient factual information to provide the "grounds" on which the claim rests, and "to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555 & n.3; *see also Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause

4

of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (quotation omitted). On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id.* at 555-56; Fed. R. Civ. P. 8(a)(2).

### III. DISCUSSION

Defendant's motion argues Plaintiff fails to state a claim for trademark infringement against Defendant for two reasons. First, Defendant asserts Plaintiff has not sufficiently alleged a likelihood of confusion. Second, Defendant argues Plaintiff has not pleaded sufficient facts to establish Defendant is secondarily liable for the alleged infringement.

#### A. Trademark Infringement

Defendant asserts Plaintiff's claims do not constitute trademark infringement because consumer distraction, rather than confusion, is not actionable. Defendant argues Plaintiff has not alleged any facts that give rise to actual confusion.

The Lanham Act protects trademarks from infringement meaning it prohibits "the use of similar marks on similar or related products or services if such use creates a likelihood of confusion." *Select Comfort Corp. v. Baxter*, 996 F.3d 925, 932 (8th Cir. 2021) (citing 15 U.S.C. § 1114(1); 15 U.S.C. § 1125(a)). To establish trademark infringement, a plaintiff must allege "it has a valid, protectible mark," and "there is a likelihood of confusion between its mark and the marks that [the defendant] is using." *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 946 (8th Cir. 2023). The elements of trademark infringement are the same under federal law and Missouri common law. *Cmty. Of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus*

5

*Christ's Church*, 634 F.3d 1005, 1010 (8th Cir. 2011); *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 322 (8th Cir. 2018).

There is no question in this case that Plaintiff has valid, protectible marks. The issue is the likelihood of confusion element. To assess the likelihood of confusion, courts ask "whether the relevant average consumers for a product or service are likely to be confused as to the source of a product or service or as to an affiliation between sources based on a defendant's use." *Select Comfort*, 996 F.3d at 933. The Eighth Circuit has set forth a list of nonexclusive, nonexhaustive factors to assess the likelihood of confusion:

> (1) the strength of the owner's mark; (2) the similarity of the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to 'pass off' its goods as those of the trademark owner; (5) incidents of actual confusion; and (6) the type of product, its cost, and conditions of purchase.

*H&R Block, Inc.*, 58 F.4th at 947 (quoting *Select Comfort*, 996 F.3d at 933 (citing *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980))). "[C]onsumer confusion is typically an issue of fact reserved for summary judgment," however, a plaintiff must still plausibly allege a likelihood of confusion to survive a motion to dismiss. *H&R Block E. Enter., Inc. v. Intuit, Inc.*, 945 F. Supp. 2d 1033, 1036 (W.D. Mo. 2013) (citing *Anheuser-Busch Inc. v. Balducci Publications*, 28 F.3d 769, 773 (8th Cir. 1994)); *see also Twombly*, 550 U.S. at 570.

In this case, Plaintiff alleges initial interest confusion. This occurs when "an alleged infringer uses a competitor's mark to direct consumer attention to its product." *Lerner & Rowe PC v. Brown Engstrand & Shely, LLC*, 119 F.4th 711, 718 (9th Cir. 2024). The confusion creates initial consumer interest "even though no actual sale is completed as a result of the confusion." *Jim S. Adler, P.C. v. McNeil Consultants, LLC*, 10 F.4th 422, 427 (5th Cir. 2021) (internal quotations omitted). Initial interest confusion is a "bait and switch" approach that allows "a

6

competitor to get its foot in the door by confusing consumers." *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 382 (7th Cir. 1996).

In 2021, the Eighth Circuit followed the lead of several other circuits and adopted the theory of initial-interest confusion as a cause of action for trademark infringement. *Select Comfort*, 996 F.3d at 935. The Eighth Circuit held that initial-interest confusion only occurs when a jury question exists as to the issue of consumer sophistication. *Id*. Thus, if consumers are sophisticated, such as professional purchasers, initial interest confusion is not possible. *Id*. at 936. However, having relatively recently adopted the initial interest confusion theory, the Eighth Circuit has not yet addressed a situation such as the one in this case concerning the purchase of a plaintiff's trademarks for advertising with an internet search engine. Although this Court, in a case brought by Plaintiff against a different defendant, as well as several other circuit and district courts across the country, have addressed similar situations. *See Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711 (9th Cir. 2024); *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229 (10th Cir. 2013); *Rescuecom Corp v. Google, Inc.*, 562 F.3d 123, 130 (2d Cir. 2009); *Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, 2022 WL 3647817 (E.D. Penn. Aug. 24, 2022).

In *NRRM, LLC v. MVF US, LLC*, Judge Autrey denied a motion to dismiss finding Plaintiff sufficiently pled trademark infringement where Plaintiff alleged the defendant used Plaintiff's mark by buying the keyword "CARSHIELD" on internet search engines causing the defendant's website to appear as an advertisement in the sponsored ads section of the search results. 2024 WL 3924589 at *4-5 (E.D. Mo. Aug. 23, 2024). In that case, Plaintiff alleged the defendant directly purchased the keywords unlike in this case where Plaintiff alleges Defendant's agents purchased the keywords. *Id*. at 1. Judge Autrey held that consumer confusion is plausibly

7

alleged when an internet search using certain marks returns generic websites that are not clearly labeled, and which consumers are likely to believe are affiliated with the trademark owner. *Id*. at 5.

A similar result beckons in this case. It is plausible, based on Plaintiff's allegations, that a consumer searching for the term "CarShield" and shown advertisements for carwarrantyoffers.com, goautowarranty.com, consumeraffairs.com, or forbes.com would believe those websites offered CarShield's VSCs. The advertisements included in Plaintiff's amended complaint use generic text and are not clearly labeled as belonging to Defendant, a competitor. *See Jim S. Adler*, 10 F.4th at 428-29 (internet advertisements using generic text without being clearly labeled as belonging to the defendant may constitute trademark infringement).

For example, on page eight of the amended complaint, Plaintiff included an image of one of Defendant's agents' advertisements. The advertisement for carwarrantyoffers.com states "Affordable Car Coverage. Top-Rated Car Protection Plans." It also offers a link to "Compare Plans." This advertisement easily deceives a consumer who searched for CarShield into believing that when he or she clicks on the link, at least one of the offered plans will be a CarShield plan. Contrast that with the allegations in *1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234 (2d Cir. 2024) wherein Warby Parker purchased the search term "1 800 contacts" and the top sponsored ad was for www.warbyparker.com. Warby Parker's advertisement clearly identified the ad belonged to Warby Parker. *Id*. at 252-54. In that case, the Second Circuit held 1-800 Contacts did not allege a likelihood of confusion. *Id*. at 255.

At this stage of the litigation, when courts have repeatedly stated the likelihood of confusion is usually a fact determination reserved for summary judgment, the Court finds

8

Plaintiff has plausibly alleged Defendant infringed Plaintiff's trademarks through initial interest confusion. The Court will deny the motion to dismiss on this issue.

## B.     Secondary Liability

Defendant asserts the Court must dismiss Plaintiff's amended complaint because Plaintiff has not sufficiently alleged facts establishing Defendant is secondarily liable for trademark infringement. The basis of Plaintiff's claims is that Defendant contracts with third-party advertising companies who then take actions which Plaintiff alleges amounts to trademark infringement. Plaintiff has not alleged Defendant itself directly infringed on Plaintiff's trademarks.

"Liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853 (1982). Under the Lanham Act, there are two forms of secondary liability: vicarious liability and contributory liability. *Phoenix Entm't Partners, LLC v. Sports Legends, LLC*, 306 F. Supp. 3d 1112, 1120 (E.D. Mo. 2018); *see also Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007); *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013). Vicarious liability requires "a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties, or exercise joint ownership or control over the infringing product." *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992). In other words, "vicarious liability arises when common-law principles of agency impose liability on the defendant for the infringing acts of its agent." *1-800 Contacts*, 722 F.3d at 1249. "Contributory infringement occurs when the defendant either (1) intentionally induces a third party to infringe on the plaintiff's mark or (2) enables a third party to infringe on the mark while knowing or

9

having reason to know that the third party is infringing, yet failing to take reasonable remedial measures." *Id*. (citing *Inwood*, 456 U.S. at 853-54; *Procter & Gamble Co. v Haugen*, 317 F.3d 1121, 1128 (10th Cir. 2003); *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 505 (6th Cir. 2013)).

Plaintiff has not alleged sufficient facts to establish either vicarious or contributory liability. No allegations in the amended complaint support "a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties, or exercise joint ownership or control over the infringing product." *Hard Rock Café*, 955 F.2d at 1150. The amended complaint does not even allege who Defendant's agents are, much less that Defendant has a partnership with these agents giving authority to bind Defendant in transactions with third parties. Nor does the amended complaint give any details as to what the agreement is between Defendant and its agents.

Similarly, Plaintiff did not allege any facts showing Defendant intentionally induced its agents to infringe Plaintiff's marks or enabled its agents to do so. Hiring an agent to purchase keywords on internet search engines is not enough to establish trademark infringement; therefore, it is also not enough to establish contributory liability for trademark infringement. *1-800 Contacts*, 119 F.4th at 239 ("[T]he mere act of purchasing a competitor's trademarks in the context of keyword search advertising does not constitute trademark infringement."). Plaintiff must allege facts to show Defendant induced or enabled its agents to use Plaintiff's trademarks and in such a way that it creates a likelihood of confusion, but Plaintiff has not done so.

To put it simply, no allegations in the amended complaint establish the relationship between Defendant and its agents; thus, Plaintiff has not sufficiently alleged vicarious or contributory liability. For this reason, the Court must grant the motion to dismiss. However, the Court will also grant Plaintiff's request to amend the complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant American Dream Auto Protect, Inc.'s Motion to Dismiss (ECF No. 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff shall file a second amended complaint no later than 30 days from the date of this Memorandum and Order.

**IT IS FURTHER ORDERED** that if Plaintiff fails to timely file a second amended complaint, the Court shall dismiss this action without prejudice.

So Ordered this 28th day of July, 2025.

_____
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**